UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBIN LEROY HARVEY,

        Petitioner,

                                                  Case Number 17-cv-12095
v.                                                Honorable Thomas L. Ludington

TONY TRIERWEILER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Robin Leroy Harvey, a state prisoner at the Bellamy Creek Correctional Facility in Ionia, Michigan, has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. Petitioner was convicted of five counts of criminal sexual conduct in the first-degree and sentenced to prison for twenty-five to fifty years for each conviction. The trial court ordered four of the sentences to run concurrently with each other and two of the sentences to run consecutively with one another. Petitioner asks that he be re-resentenced before a different judge on grounds that (1) the state trial court improperly relied on his lack of remorse when sentencing him, and (2) he was denied his constitutional right to effective assistance of appellate counsel. These claims do not warrant habeas corpus relief for the reasons stated below. Accordingly, the petition will be denied.

**I.**

Petitioner was charged with five counts of first-degree criminal sexual conduct pursuant to Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen).

The charges arose from allegations that Petitioner sexually penetrated his biological daughter from the time the girl was six or seven years old until she was eleven.

Petitioner was tried before a jury in Oakland County Circuit Court. As described by the state court,

> [t]he testimony at trial showed that Defendant committed numerous acts of criminal sexual acts against his daughter over a period of several years. Defendant's daughter testified [that] she recalled Defendant's "private part" inside her vagina when she was eight, nine, and ten years [old]. Defendant put his private part inside his daughter's mouth more than one time, but she could not recall the first time it happened. Defendant put his private part into his daughter's "butt" on two or three occasions. Defendant would make his daughter go in his bedroom to watch movies and "rape" her on the bed. After Defendant committed these acts, he would make his daughter take a shower and wash herself and tell her to use soap and water on her vagina. Defendant would himself wash his daughter by taking her brother's toy, filling it up with water, and he would clean her out with it by squeezing the water and "all the stuff came out." Defendant's daughter testified that Defendant always began with oral sex and then ended with vaginal penetration with his penis and would make her say "dirty words" during the acts. Defendant told her daughter not to tell anyone or he would hurt her.

Op. and Order at 3-4, *People v. Harvey*, No.12-242235-FC (Oakland Cty. Cir. Ct. Oct. 8, 2015), ECF No. 8-11, PageID. 640-641.

Petitioner did not testify, and his only defense witnesses were two of the complainant's former teachers who testified, among other things, that they did not notice anything that suggested the complainant was being sexually abused. *See* 12/13/12 Trial. Tr. at 4-6, ECF No. 8-7, PageID. 425-426 (Tamra Roussey's testimony); *id.* at 7-10, PageID. 426-427 (Renee Todd's testimony). Petitioner's defense was that the only evidence linking him to the crimes was the complainant's testimony and that the complainant could not remember details about when, where, and how often the incidents occurred. *See id.* at 41-45, PageID. 435-436.

On December 13, 2012, the jury found Petitioner guilty, as charged, of five counts of first-degree criminal sexual conduct. *See id.* at 63-65, PageID. 440-441. On January 22, 2013, the trial

court sentenced Petitioner to prison for twenty-five to fifty years for each count of criminal sexual conduct. The court ordered counts one, three, four, and five to run concurrently with each other and count two to run consecutively to count one. *See* 1/22/13 Sentencing Tr. at 7, ECF No. 8-8, PageID. 448.

In an appeal as of right, Petitioner's appellate attorney argued that Petitioner was entitled to a new trial because his trial attorney failed to challenge the prosecution's notice of intent to introduce evidence of uncharged acts of criminal sexual conduct. The Michigan Court of Appeals rejected the argument and affirmed Petitioner's convictions because his cursory treatment of the issue resulted in it being abandoned and because his claim of ineffective assistance of counsel lacked merit. *See People v. Harvey*, No. 314555, 2014 WL 2118280 (Mich. Ct. App. May 20, 2014) (unpublished).

In an application for leave to appeal in the Michigan Supreme Court, Petitioner raised the same issue that he presented to the Michigan Court of Appeals and two new issues. The new claims were that he was excluded as a suspect by a forensic scientist and that he was charged with anal penetration even though the forensic scientist said there was no evidence of it. The Michigan Supreme Court denied leave to appeal on September 29, 2014, because it was not persuaded to review the questions presented to it. *See People v. Harvey*, 853 N.W.2d 360 (Mich. 2014).

Petitioner subsequently filed a *pro se* motion for relief from judgment in the state trial court. (ECF No. 8-9.) He argued that: (1) appellate counsel was ineffective for failing to preserve his "other acts" claim for review and for not raising his current claims on direct appeal; (2) there was insufficient evidence of five counts of criminal sexual conduct, and trial counsel was ineffective for not making an opening statement, moving for a directed verdict, or filing a motion for new trial; (3) his sentence was disproportionate and cruel and unusual punishment; and (4) the

trial court improperly relied on his lack of remorse when sentencing him and failed to give substantial and compelling reasons for departing upward from the sentence guidelines. (*Id*., PageID. 454, 457.)

The trial court denied Petitioner's motion in part because Petitioner had failed to demonstrate pursuant to Michigan Court Rule 6.508(D)(3)(b)(i) that, but for the alleged error, he would have had a reasonably likely chance of acquittal. The trial court also opined that, under Michigan Court Rule 6.508(D)(3)(b)(iii), there was no irregularity so offensive to the maintenance of a sound judicial process that Petitioner's conviction should not be allowed to stand. The court determined that there was sufficient evidence to support Petitioner's convictions and that, given the overwhelming evidence, Petitioner had failed to demonstrate the alleged errors would have changed the outcome of the trial. Finally, the court stated that Petitioner's sentence was presumed proportionate, it was not cruel and/or unusual punishment, and there was no upward departure in Petitioner's sentence because Petitioner was subject to a twenty-five-year mandatory minimum sentence under state law. (ECF No. 8-11.)

Petitioner applied for leave to appeal the trial court's decision, but the Michigan Court of Appeals denied the application because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Harvey*, No. 331291 (Mich. Ct. App. Apr. 11, 2016) (unpublished). On December 28, 2016, the Michigan Supreme Court denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Harvey*, 888 N.W.2d 75 (Mich. 2016).

On June 26, 2017, Petitioner filed his habeas corpus petition in this Court. His two claims read as follows:

> I. The trial court improperly relied on Defendant's lack of remorse in sentencing him to a lengthy term of years.

>    II.  Defendant was denied his Sixth and Fourteenth Amendment rights to the effective assistance of appellate counsel where counsel's performance fell below an objective standard of reasonableness resulting in prejudice to the defendant.

Pet. at 5, 7, ECF No. 1, PageID. 5, 7.

The State argues in an answer to the petition that Petitioner's first claim is procedurally defaulted and that the trial court did not unreasonably reject Petitioner's first or second claim. (Answer in Opp'n to Pet. for Writ of Habeas Corpus at i-ii, ECF No. 7, PageID. 192-193.) Petitioner replies that the state trial court used the wrong standard when determining whether Petitioner was prejudiced by the sentencing error, that appellate counsel was constitutionally ineffective for not raising his sentencing claim on direct appeal, and that he was sentenced, at least in part, on inaccurate and irrelevant information. (Reply to Answer in Opp'n to Pet. for Writ of Habeas Corpus at unnumbered pages 2-4, ECF No. 9, PageID. 918-920.)

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petitioner is not entitled to relief on any claim adjudicated on the merits in state-court proceedings unless the adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When a state court fails to adjudicate a petitioner's claim on the merits, the deference due under § 2254(d) does not apply, and review is *de novo*. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006).

### III.

### A.

Petitioner alleges that the trial court sentenced him to a lengthy term of years due in part to Petitioner's lack of remorse and failure to take responsibility for his crimes.[1] Petitioner contends that he had a Fifth Amendment right not to incriminate himself at sentencing and that the trial court violated this right by sentencing him to a lengthy term of years after he refused to admit guilt. Petitioner also contends that the trial court's reliance on his lack of remorse and failure to take responsibility violated his right to due process under the Fourteenth Amendment because there is

---

[1] The State argues that this claim is procedurally defaulted because Petitioner did not raise the claim on direct appeal and because the state trial court determined that Petitioner had failed to demonstrate actual prejudice under Michigan Court 6.508(D)(3)(b). (Answer in Opp'n to Pet. for Writ of Habeas Corpus, at 31, ECF No. 7, PageID. 224.) While it is true that "[f]ederal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule,' " *Johnson v. Lee*, 136 S. Ct. 1802, 1803–04 (2016) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)), a procedural default ordinarily " 'is not a jurisdictional matter,' " *id.* at 1806 (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997)). In the interest of judicial economy, a federal court may bypass a procedural-default question when the merits of the claim are easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court chooses to forego a procedural-default analysis here because it is more efficient to address the merits of Petitioner's claim than to determine whether the claim is procedurally defaulted and whether Petitioner has shown "cause" for the procedural default and resulting prejudice or a miscarriage of justice.

no mention of remorse or responsibility in the record for his case. (Pet. at 5, ECF No. 1, PageID. 5; Brief in Support of Habeas Corpus Pet. at B4-B6, ECF No. 1, PageID. 15-17.)

Petitioner raised this issue in his post-conviction motion for relief from judgment. He also alleged in his motion that the trial court failed to provide substantial and compelling reasons for departing upward from the sentencing guidelines. The state trial court rejected Petitioner's claim as follows:

> Defendant also contends that this court improperly relied on Defendant's lack of remorse in departing upward. However, there was no upward departure in Defendant's sentence. Defendant was subject to a 25-year mandatory minimum sentence under MCL 750.520(2)(b). Under MCL 769.34(2)(a), the required imposition of this mandatory sentence would not constitute a departure and would not require justification by substantial and compelling reasons. *People v Izarraras-Placante*, 246 Mich App 490, 497 (2001).

Op. and Order at 5, *People v. Harvey*, No. 12-242235-FC (Oakland Cty. Cir. Ct. Oct. 8, 2015), ECF No. 8-11, PageID. 642.

In his habeas brief, Petitioner concedes that the sentencing guidelines were not exceeded, as the mandatory minimum for each conviction was twenty-five years. But he maintains that the trial court based the consecutive sentences, at least in part, on his assertion of innocence and refusal to admit guilt. He contends that this error violated his Fourteenth Amendment right to be sentenced on accurate information and his Fifth Amendment right not to incriminate himself. According to him, the trial court's comments implied that, had he shown any remorse or taken responsibility, he would have been sentenced more leniently. (Brief at B4-B6, ECF No. 1, PageID. 15-17.)

**1.**

The Fifth Amendment to the United States Constitution is "applicable to the states through the Fourteenth Amendment," and it "commands that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' " *Estelle v. Smith*, 451 U.S. 454, 462 (1981). This

privilege applies at sentencing. *See id*. at 462-463 (noting that the availability of the Fifth Amendment privilege does not turn on the type of proceeding where its protection is invoked, and discerning no basis for distinguishing between the guilt and penalty phases of a trial insofar as the Fifth Amendment privilege is concerned); *accord White v. Woodall*, 572 U.S. 415, 421 (2014) (stating that the Supreme Court has "held that the privilege against self-incrimination applies to the penalty phase"); *Mitchell v. United States*, 526 U.S. 314, 328-329 (1999) (according "the [Fifth Amendment] privilege the same protection in the sentencing phase of 'any criminal case' as that which is due in the trial phase of the same case" and stating that "[t]he concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing").

A sentence violates the Due Process Clause of the Fourteenth Amendment if the trial court relies on extensively and materially false information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To obtain relief under the Due Process Clause, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

**2.**

At the sentence proceeding in the present case, the prosecutor and defense counsel made arguments for and against consecutive sentences. The trial court then asked Petitioner whether he wished to make a statement. Petitioner answered:

> Just that I wish my children well. I guess that's about it you know. I didn't do what I'm being accused of so.

1/22/13 Sentencing Tr. At 6, ECF No. 8-8, PageID. 447. The trial court responded:

> Well, Mr. Harvey the evidence was very strong. I don't believe there's any question at all in the minds of the jurors. There was no question in my mind that this happened.

> I agree with the prosecutor, it was heinous. I feel very sorry not only for your daughter who you abused, but her sister who was observing it while it was going on, is going to feel guilt for the rest of her life for not intervening sooner.
>
> So I'm going to follow the recommendation in this matter. . . . [A]ll counts are twenty-five years to fifty years.

*Id*. at 6-7, PageID. 447-448.

The court stated that Petitioner would receive jail credit on counts one, three, four, and five, but not on count two because that count was consecutive to count one. *Id*. at 7, PageID. 448. Then, after imposing fees, costs, testing, a no-contact order, and GPS monitoring, the trial court said:

> The Court has exceeded the guidelines, but finds there to be good reason to do so based on the age that the physical abuse began of the child by her own biological father. *Defendant has never shown any remorse or taken any responsibility*.

*Id*. at 8, PageID. 449 (emphasis added).

The court gave no indication that its imposition of consecutive sentences was based on Petitioner's lack of remorse or failure to acknowledge responsibility. Instead, the court mistakenly provided reasons for exceeding the sentencing guidelines, which did not apply because there was a mandatory minimum sentence of twenty-five years.

Even if the trial court's comment about Petitioner's failure to show remorse or take any responsibility for his conduct were interpreted as a reason for imposing consecutive sentences, a defendant's lack of remorse and failure to accept responsibility for his or her crimes are permissible reasons for a trial court's decision not to impose a lesser sentence. *United States v. Daneshvar*, 925 F.3d 766, 788-790 (6th Cir. 2019); *see also In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) (stating that "[d]ue process is not implicated by the consideration of a defendant's lack of remorse as an aggravating factor" and that "a defendant's remorse—or lack thereof—is an appropriate

consideration in meting out punishment"); *United States v. Phibbs*, 999 F.2d 1053, 1080 (6th Cir. 1993) ("It is well established that a penal scheme which extends a benefit to defendants who own up to their conduct does not unconstitutionally burden those who exhibit no remorse.").

Furthermore, the cases on which Petitioner relies are distinguishable. Petitioner cites *Mitchell*, 526 U.S. at 314, a case in which

> the [Supreme] Court held that a sentencing court may not make adverse inferences from a defendant's silence as to the facts of the offense. *Id.* at 330, 119 S. Ct. 1307. The defendant in *Mitchell* pled guilty to a number of drug offenses, but did not admit to trafficking a specific amount of narcotics. At her sentencing hearing, the government produced witnesses to testify as to the amount of drugs involved (which in turn would determine her mandatory minimum sentence). Though her lawyer cross-examined the government's witnesses, the defendant herself did not testify. In finding credible the testimony of the government witnesses, the district court noted that it held the defendant's silence against her, concluding that her plea waived her right to remain silent. *Id.* at 319, 119 S. Ct. 1307. The Supreme Court rejected the district court's legal reasoning and held that the court's adverse factual inference violated the Fifth Amendment by effectively relieving the government of its burden to prove the facts of the crime relevant to sentencing. *Id.* at 330, 119 S.Ct. 1307. In so doing, the district court "enlist[ed] the defendant" into the government's case against her "at the expense of the self-incrimination privilege." *Ibid.*
>
> The majority went on to qualify this broad proposition: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of [a] downward adjustment . . . is a separate question. It is not before us, and we express no view on it." *Ibid.*

*Miller v. Lafler* 505 F. App'x 452, 458 (6th Cir. 2012). As in *Miller,* Petitioner's case does not fit within *Mitchell's* narrow holding because

> "*Mitchell* addressed negative *factual* inferences as to the circumstances and details of the crime based upon a defendant's *silence*. The adverse inference made in *Mitchell* pertained to an unproven, unadmitted fact of the crime, the truth of which would determine the applicability of a mandatory sentencing provision.

*Id*. (emphases in original).

The trial court in Petitioner's case did not draw negative inferences from silence on an unproven fact of the crime. Instead, any negative inference that the trial court drew from

-10-

Petitioner's allocution pertained to his perceived lack of remorse, a factor that may be assessed when applying a discretionary consecutive-sentence provision. *Id*. at 458-59. Furthermore, as in *Miller*,

> any negative inference made would have been based on [Petitioner's] *statements,* as opposed to his mere silence. This voluntary act not only distinguishes [this] case from *Mitchell,* but also may have waived [Petitioner's] Fifth Amendment privilege as to the content of his statements.

*Id*. at 459 (emphasis in original). Even if the inference allegedly made in Petitioner's case

> violates the spirit of *Mitchell,* this is not enough for the purposes of AEDPA. [The Court] cannot grant habeas on a claim that does not rest on a violation of "clearly established Federal law," 28 U.S.C. § 2254(d)(1), and a rule of law is not clearly established unless the Supreme Court has "squarely established" it. [*Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009)]. Far from squarely establishing the rule pressed here, the Supreme Court "expressed no view" on "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility." *Mitchell,* 526 U.S. at 330, 119 S. Ct. 1307.

*Id*. This is fatal to Petitioner's claim. *See id*.

Petitioner also relies on the Sixth Circuit's decision in *Ketchings v. Jackson*, 365 F.3d 509 (6th Cir. 2004). In *Ketchings*, the Sixth Circuit affirmed the District Court's grant of a conditional writ of habeas corpus because the sentencing judge referred negatively and indirectly to Ketchings' continued assertion of his belief in his innocence and also implied that Ketchings would be sentenced more leniently if he accepted the jury's verdict and relinquished his Fifth Amendment privilege to refuse to admit. Ketchings, however,

> *did* express remorse during his allocution. In other words, the state court's reason for handing down a harsher sentence reeked of pretext—one could not reasonably infer a lack of remorse from the defendant's failure to admit guilt, as he expressed sympathy for the family of the victim.

*Miller*, 505 F. App'x at 460 (emphasis in original) (internal citation omitted). The same is not true of Petitioner who expressed no remorse for his conduct and did not accept any responsibility for

-11-

the crimes. The state trial court, therefore, did not violate Petitioner's Fifth Amendment right to remain silent and not to incriminate himself at sentencing.

The trial court also did not violate Petitioner's Fourteenth Amendment due process right not to be sentenced on extensively and materially false information. Although Petitioner stated that he did not do what he was accused of doing, the trial court pointed out that there was "very strong" evidence at trial, there was no question in the jurors' minds, and "[t]here was no question in [the court's] mind that this happened." 1/22/13 Sentencing Tr. At 6, ECF No. 8-8, PageID 447.

In conclusion, the state trial court's rejection of Petitioner's Fifth and Fourteenth Amendment claims on post-conviction review was not objectively unreasonable. Accordingly, Petitioner has no right to relief on his constitutional claims about his sentence.

**B.**

Petitioner's only other claim is that his appellate attorney was ineffective for failing to raise his sentencing claim during the appeal of right. Petitioner contends that his sentencing claim was a "dead-bang winner" and that his appellate attorney's failure to raise the issue prejudiced him because his sentence was effectively doubled due to the trial court's reliance on his assertion of innocence. Petitioner further alleges that, but for his appellate attorney's error, there is a reasonable probability that the appellate court would have remanded his case for re-sentencing. (Pet. at 7, ECF No. 1, PageID. 7; Brief in Support of Pet. at B7-B8, ECF No. 1, PageID. 18-19.)

No state court specifically addressed this issue, but the claim lacks merit even under a *de novo* standard of review. On habeas review, the proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under *Strickland,* 466 U.S. at 687, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced

the defense. When the issue is appellate counsel's representation, the petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability the petitioner would have prevailed on appeal if his attorney had raised the issues. *Robbins*, 528 U.S. at 285 (citing *Strickland,* 466 U.S. at 687-91, 694).

Petitioner's sentencing claim lacks merit for the reasons given in the previous section of this opinion, and "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Even if appellate counsel's performance were deemed deficient, the deficient performance did not prejudice Petitioner because there is not a reasonable probability that Petitioner would have prevailed on appeal if counsel had raised the sentencing issue. The minimum sentence of twenty-five years was mandatory under Mich. Comp. Laws § 750.520(2)(b) because Petitioner was over seventeen years old at the time of the crimes, and the complainant was under thirteen years of age. Additionally, the trial court had authority to impose consecutive sentences because two of the offenses arose from the same transaction. Mich. Comp. Laws § 750.520b(3); *People v. Ryan,* 819 N.W.2d 55, 63 (Mich. Ct. App. 2012).

Furthermore, there were compelling reasons to impose consecutive sentences, apart from Petitioner's failure to show remorse or accept responsibility for his actions. Among the reasons provided at sentencing for imposing a lengthy sentence were: the relationship between Petitioner and the complainant; the age of the complainant when the abuse occurred; the prolonged and repetitive nature of the abuse; the emotional and physical impact the abuse had on the complainant; and the impact of the crimes on the complainant's sister. Given these factors, it is unlikely that the Michigan Court of Appeals would have concluded that appellate counsel's performance

prejudiced Petitioner. Petitioner has failed to make the necessary showing under *Strickland* and *Robbins*.

### IV.

The state court's rejection of Petitioner's first claim was not objectively unreasonable, and Petitioner's second claim lacks substantive merit. Accordingly, it is **ORDERED** that the habeas corpus petition (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. Nor would reasonable jurists conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED,** as any appeal would be frivolous and could not be taken in good faith.

Dated: June 16, 2020

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Robin Leroy Harvey** #863409, BELLAMY CREEK CORRECTIONAL FACILITY, 1727 WEST BLUEWATER HIGHWAY, IONIA, MI 48846 by first class U.S. mail on June 16, 2020.

s/Kelly Winslow
KELLY WINSLOW, Case Manager